EMILIO ALVAREZ, Plaintiff and Appellee-Appellant, *v.* RAFAELA MANZANO ET AL., Defendants and Appellants-Appellees.

No. 9267. Argued March 6, 1946.—Decided June 28, 1946.

*Enrique Báez García* for appellants-appellees. *Angel Rivera Colón* for appellee-appellant.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is a suit for performance of contract instituted by Emilio Alvarez against the sole and universal heirs of his wife, Angel Eurípides and Rafaela Manzano. When Alvarez married Aurelia Manzano she brought to the marriage a rural property of 25.58 acres (*cuerdas*) described in the complaint, containing five houses. The property was encumbered by a mortgage in favor of the Federal Land Bank of Baltimore. During their marriage they erected on that same property four houses, which belong to the conjugal partnership. Since there were certain disagreements between Alvarez and the two heirs of his wife, on motion of the former, the lower court decreed the judicial administration of the whole estate. Upon setting a hearing for June 30, 1944, on an incident of the judicial administration, Alvarez and the two heirs met in the lower court, and acting on the suggestion that they should come to an agreement with regard to the partition of the inheritance, they moved for a continuance of the hearing, and the parties, assisted by their respective attorneys, met in the courtroom and came to an agreement which reads as follows:

### "CONTRACT OF COMPROMISE

"BE IT KNOWN BY THESE PRESENTS, THAT WE, Doña Rafaela and Don Angel Eurípides Manzano, sister and brother respectively, of legal age, married, the former housekeeper and the latter a farmer, and residents of Mayagüez and Ciales, respectively, PARTY OF THE FIRST PART,

"AND Don Emilio Alvarez, of legal age, a widower, merchant, and resident of San Juan, Puerto Rico, PARTY OF THE SECOND PART,

"COMPROMISE UNDER THE FOLLOWING CONDITIONS:

"1. That in order to put an end to the judicial administration pending before the District Court of Arecibo, Puerto Rico, instituted by Don Emilio Alvarez under Civil Case No. 4725, the parties have agreed as follows:

"(a) Doña Rafaela and Don Angel Eurípides Manzano, parties herein, bind themselves to sell to Don Emilio Alvarez and the latter binds himself to purchase, their shares in the estate left by the deceased Doña Aurelia Manzano, sister of the first party and wife of

the second party, said estate consisting of the rural property situated in the ward of Jaguas, Ciales, of about 25 acres (*cuerdas*) and containing several dwelling houses of which some, that is five houses, are of a separate character and four houses belong to the conjugal partnership between the deceased Doña Aurelia Manzano and Don Emilio Alvarez.

"(*b*) For the purpose of this sale the land with all the houses is appraised in the amount of fourteen thousand dollars ($14,000).

"(*c*) The houses belonging to the conjugal partnership, which are four, are appraised in the amount of four thousand five hundred dollars ($4,500).

"(*d*) In the inventory in the case of judicial administration there appear as personal property a Packard automobile, furniture in Río Piedras and in Ciales, and the parties agree that they shall all be awarded to Don Emilio Alvarez and that in exchange he shall waive the usufructuary share to which he is entitled as widower.

"(*e*) Before executing the deed of sale a claim presented by Attorney Camuñas to the heirs for professional services rendered shall be settled and to that effect Mr. Alvarez may retain a certain amount in order to pay said debt.

"(*f*) The debts according to the inventory taken by the parties amount to about one thousand six hundred and seventeen dollars and eighty cents ($1,617.80), which debts shall be paid by both parties, the brothers Manzano and Mr. Alvarez, in equal shares, and in case of any other debt they likewise bind themselves to pay it share and share alike.

"(*g*) Mr. Alvarez paid the amount of one hundred and forty dollars ($140) as a debt for the furniture in Río Piedras, of which amount the brothers Manzano shall pay one-half.

"(*h*) Since September, 1942, the houses of the conjugal partnership have been yielding a monthly rental of forty-two dollars ($42), of which rental Mr. Alvarez is entitled to receive one-half.

"In witness whereof, the parties in agreement sign these presents, at Arecibo, Puerto Rico, this 30th day of June, 1944.

"(Sgd.) Emilio Alvarez

"(Sgd.) Rafaela Manzano

"(Sgd.) Angel E. Manzano

"Witnesses: (Sgd.) José Febo. (Sgd.) Evaristo Ortiz."

Since besides the mortgage credit of the Federal Land Bank of Baltimore there were other debts of the inheritance, the exact amount of which was unknown to the parties at

that time, they decided to meet on July 6 following, at the office of plaintiff's attorney in Ciales, for the purpose of determining said debts which, according to the contract, should be paid by the plaintiff and defendants in equal shares. After determining the amount of these debts they were to sign the corresponding deed. The meeting was held on July 20, whereupon the following liquidation was made:

| | |
|---|---:|
| Debts accepted in the document | $1, 617. 80 |
| Debts accepted in payment of furniture | 140. 00 |
| Debt of Ramón Fernández | 90. 02 |
| Debt of Maximino Fernández | 70. 75 |
| Debt to the Municipality of Ciales on account of water | 7. 80 |
| | $1, 926. 37 |

It was further determined that the mortgage credit of the Federal Land Bank of Baltimore amounted to $1,164.24. Although the amount of the debts was determined, the deed was not signed because of a difference of opinion in the interpretation of the contract. Defendants alleged that the four houses of the conjugal partnership were not included in the amount of $14,000, which was the amount fixed "for the purpose of the sale" as the value of the land with *all* the houses, and they sought to add to said amount $2,250, which was the value of their shares in the four houses belonging to the conjugal partnership. Plaintiff, on the other hand, required that the whole amount of the mortgage credit of the Federal Land Bank of Baltimore be deducted from the $14,000. Under these circumstances, the contract of compromise was not consummated and shortly thereafter Alvarez brought this suit for specific performance.

The judgment for plaintiff provided in its dispositive part, as follows:

"Therefore, since the land with all its houses was appraised in the amount of fourteen thousand dollars ($14,000), the following amounts must be deducted therefrom:

| | |
|---|---|
| Half of the debt amounting to $1,926.37 _____ | $963. 18 |
| Half of the mortgage credit due to the Federal Bank | 582. 12 |
| Half of the value of the houses of the conjugal partnership _____ | 2, 250. 00 |
| Half of the rental of the houses of the conjugal prop-.erty up to April 30, 1945, amounting to $1,344__ | 672. 00 |

which makes a total of four thousand four hundred and sixty-seven dollars and thirty cents ($4,467.30). Defendants are therefore entitled to receive as total payment for the property described in the complaint and the houses contained therein, conjugal as well as separate, the amount of nine thousand five hundred and thirty-two dollars and seventy cents ($9,532.70); furthermore, plaintiff and defendants must deposit with the clerk of this court, in order to pay the fees corresponding to Attorney Camuñas (paragraph 'e' of the contract), the amount of five hundred dollars ($500), that is, two hundred and fifty dollars ($250) each party.

"THEREFORE, the court renders judgment for plaintiff and consequently orders him to deposit with the clerk of this court, within the term of fifteen days after this judgment becomes unappealable, the amount of nine thousand five hundred and thirty-two dollars and seventy cents ($9,532.70), provided that defendants, after plaintiff makes the aforesaid deposit, execute in favor of the plaintiff the corresponding deed of conveyance of the property of 25.58 acres described in the complaint, including in said sale all the houses contained therein; and in case defendants fail to do so the marshal is hereby ordered to execute the proper deed of conveyance of said property in favor of plaintiff. It is further provided that plaintiff and defendants deposit with the clerk of this court five hundred dollars ($500), that is, two hundred and fifty dollars ($250) each party, for attorney's fees to Attorney José Camuñas of Río Piedras for the services rendered to the heirs of Aurelia Manzano Padró, with costs on the defendants and $150 as fees for plaintiff's attorney."

Both parties appealed. The defendants, from the whole judgment. Plaintiff from that part of the judgment providing that one-half of the mortgage credit, that is $582.12, and not the whole amount, be deducted from the selling price.

 As we have seen, this debt was not expressly mentioned in the contract of compromise and at that time its· exact amount was unknown; but it is a fact that plaintiff

as well as defendants knew of the existence of the debt when they signed the contract. Plaintiff, although remiss at the beginning, but very openly afterwards, and his witness José Febo, testified that although the credit was not mentioned in the contract the defendants agreed verbally with the plaintiff that the whole amount be deducted. It seems that the lower court did not believe these witnesses on this point for it decreed that only half of the amount be deducted. We are of the opinion that this pronouncement is not erroneous, for it was a debt of the estate and although it was not expressly mentioned in the contract, it was evidently covered by paragraph (f) of said contract which provides that any other debt would be paid by the parties share and share alike.

 The first contention of the defendants is that the contract signed on June 30 was a mere offer of compromise subject to the agreement of both parties at a meeting which was to be held subsequently in Ciales as to certain items which had not been determined in the contract, and that when the parties met they were unable to reach an agreement.

The contract was not a mere offer of compromise. In the document the land with all its houses was appraised, for the purpose of the sale, at $14,000, thereby including in that price the four houses belonging to the conjugal property. But as plaintiff had in those four houses a share equal to one-half of their value, and since it should be presumed that he only purchased from the defendants the interests which they had in the houses, the price was fixed in $4,500, and therefore $2,250, which was the interest that the purchaser had in said houses, should be deducted from the $14,000. It was agreed that certain personal property which they had in Río Piedras and Ciales, although it belonged to the conjugal property, shall be adjudicated to the plaintiff, who in turn was bound to waive the usufructuary share as widower to which he was entitled. An inventory was made of the debts of the estate, which amounted to $1,617.80, it being stipulated that of this amount plaintiff should pay one-half and defendants the other

half, setting this as a standard for any other debt that might appear. It was also agreed that before the execution of the deed a claim presented by Attorney Camuñas, which was pending, should be settled and Mr. Alvarez was authorized to retain a certain amount in order to pay said debt. It was also stipulated that Mr. Alvarez had paid $140 on account of some furniture in Río Piedras and that defendants should pay one-half of this amount. Lastly, it was made clear that since September, 1943, the houses of the conjugal property had been yielding rent at the rate of $42 monthly and that of this rental plaintiff was entitled to receive one-half.

The fact that at the time of signing the contract they did not know the exact amount of some of the debts, such as the mortgage credit of the Federal Bank and what was owed to a firm in Ciales for lumber and other construction materials, does not mean that the contract was uncertain as alleged by the defendants, and that consequently the suit for performance of contract did not lie, for a simple arithmetical operation would determine the exact amount that plaintiff had to pay. It is true that at that time the exact amount that had to be paid by the purchaser, after deducting one-half of the oustanding debts, was not determined; but the manner of determining it was laid down, thereby complying with the requirement of certainty in the price as provided by § 1334 of the Civil Code. See, by analogy, *Morales* v. *Alvarez,* 63 P.R.R. 199.

The contract was perfected in Arecibo on June 30, 1944, when both parties, vendors and purchaser, reached an agreement as to the price and the thing to be sold. What the parties postponed to be executed in Ciales was the consummation of the contract, and since the consummation was not carried out then, plaintiff has now demanded it by way of this action for performance of contract.

Defendants argued that the lower court erred in granting the complaint because the aforesaid document had not

been approved by the court. They maintain that this approval was necessary because the property was subject to judicial administration.

Approval was not necessary, for all the persons interested in the inheritance, that is, plaintiff and defendants, are of age. See by analogy § 604 of the Code of Civil Procedure. Once the parties have come to an agreement, or the judgment decreeing the performance of the contract becomes unappealable and the corresponding deed is executed, it will be sufficient to pray the court to terminate the judicial administration and to order the administrator to deliver the property to the purchaser.

The defendants contended that the lower court acted without jurisdiction in this case in approving the partition of the state of Aurelia Manzano without requiring the inheritance tax receipt.

Defendant's contention is predicated upon the provisions of § 12 of Act No. 99 of August 29, 1925, (Laws of 1925, p. 790), as amended by Act No. 20, approved April 27, 1933 (Laws of 1932-33, 232).[1]

---

[1] Said Section, as amended, provides:

"Except in such special cases as are determined in section 5a of this Act, no court shall approve the partition or distribution of the estate of any decedent or allow any final settlement of the accounts of any executor, administrator, trustee or person administering any estate, unless the special receipt or receipts as provided in section 11 of this Act, have been produced and exhibited; and no notary shall issue, authorize or certify any instrument of award, partition, distribution, alienation or hypothecation of property unless such receipt or receipts issued by the Treasurer are presented; and no registrar shall record in any registry under his charge any instrument or judicial decision, ruling or judicial warrant, authorized, rendered or issued in connection with the partition, distribution or delivery of such property, unless such receipt or receipts of the Treasurer are presented; and persons violating the provisions of this section shall be liable for all taxes uncollected because of such violation, with interest thereon, as provided in section 9 of this Act, and they shall be guilty of a misdemeanor punishable by a fine of not less than a hundred (100) nor more than one thousand (1,000) dollars, or by imprisonment in jail from three months to one year, or both penalties, in the discretion of the court."

Undoubtedly it was through this contract, the performance of which was decreed by the court, that the partition of the estate was carried out by Aurelia Manzano. But since all the heirs are of age the partition of the estate does not require the approval of the court, pursuant to § 604 of the Code of Civil Procedure. Therefore, § 12 did not deprive the court of jurisdiction to render the judgment in the present case. We do not mean that the parties herein may circumvent the provisions of the above-mentioned § 12, for upon executing the deed, which was ordered by the judgment, the notary, in compliance with said § 12, would not authorize the deed unless the receipt evidencing the payment of the inheritance tax were presented. The registrar in turn, pursuant to that same § 12, would not record the deeds unless the inheritance-tax receipts were produced.

 Lastly, defendants complain that the lower court imposed on them costs and attorney's fees.

As to the award of costs, we have repeatedly held that their imposition on the defeated party is mandatory by express provision of the law. As regards the imposition of attorney's fees, it is discretionary with the trial court, taking into account the obstinacy, degree of blame in the litigation, and the work necessarily done by the attorney of the adverse party. We see no reason for reversing this pronouncement.

The judgment is affirmed.